| | |
|---|---|
| Soo Line Railroad Company, *doing business as Canadian Pacific*, | Case No. 18-cv-1989 (SRN/TNL) |
| Plaintiff/Counter Defendant, | |
| v. | **ORDER** |
| The Travelers Indemnity Company, | |
| Defendant/Third-Party Plaintiff/Counter Defendant, | |
| v. | |
| Continental Insurance Company, *as successor in interest to certain policies issued by Harbor Insurance Company*, | |
| Third-Party Defendant/Counter Claimant. | |

Arthur G. Boylan, Joseph W. Anthony, and Norman H. Pentelovitch, Anthony Ostlund Baer & Louwagie PA, 90 South Seventh Street, Suite 3600, Minneapolis, MN 55402 (for Soo Line Railroad Company);

Amy J. Woodworth, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402; Craig Russell Blackman and Samuel J. Arena, Jr., Stradley Ronon Stevens & Young, LLP, 2005 Market Street, Suite 2600, Philadelphia, PA 19103; and William T. Mandia, I, Stradley Ronon Stevens & Young, LLP, 457 Haddonfield Road, Suite 100, Cherry Hill, NJ 08002 (for The Travelers Indemnity Company); and

Andrea E. Reisbord and Janine M. Loetscher, Bassford Remele, 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402 (for Continental Insurance Company).

This matter comes before the Court on The Travelers Indemnity Company's ("Travelers") Motion to Compel Discovery and to Extend Case Deadlines (ECF No. 39). A hearing was held on April 10, 2019. Arthur G. Boylan and Norman H. Pentelovitch appeared on behalf of Soo Line Railroad Company ("Soo Line"). William T. Mandia, I, and Amy J. Woodworth appeared on behalf of Travelers. Andrea E. Reisbord appeared on behalf of Continental Insurance Company ("Continental").

## I. BACKGROUND

This is an insurance coverage dispute regarding environmental contamination in connection with certain property known as the Shoreham Yard, located in Minneapolis, Minnesota, which "has been operated as a railyard since the late 1880s." (Compl. ¶ 3, ECF No. 1-1.) As alleged in the Complaint, "[a]ccidental, repeated, and continuous spills and leaks, which occurred in the course of the historical operations at [the] Shoreham Yard, have resulted in soil and groundwater contamination both on and off site." (Compl. ¶ 3; see Compl. ¶¶ 30-34.) "Contaminated groundwater plumes currently extend nearly two miles off-site from the east side of the property and more than a mile off site from the west." (Compl. ¶ 3; see Compl. ¶.)

Soo Line alleges that, as of December 31, 2016, it has "paid approximately $50 million" in losses and legal expenses in connection with third-party property damage. (Comp. ¶ 5; see Compl. ¶¶ 37-38.) Soo Line "expects to spend tens of millions more . . . in the years to come." (Compl. ¶ 5; see Compl. ¶ 38.) Soo Line alleges that Travelers is obligated to indemnify it for "Travelers'[s] proportionate share" of these losses and legal expenses under two policies issued by Travelers in or around the late 1960s and early

1970s.  (Compl. ¶ 43; *see* Compl. ¶¶ 6, 16-19, 46-51.)  Travelers has brought in Continental, contending that Continental is liable to Soo Line for part of the coverage period at issue under another policy issued to Soo Line in the early 1970s.  (*See generally* Third Party Compl., ECF No. 13.)

## II. ANAYSIS

Travelers brings the instant motion, taking issue with certain of Soo Line's discovery responses and seeking to extend the deadlines in the Pretrial Scheduling Order (ECF No. 20).[1]

### A.  Discovery Disputes

#### 1.  Legal Standard

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  *Id.*  "Relevance is construed broadly at the discovery stage."  *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012).  Nonetheless, some threshold showing is necessary "before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  Under Rule 37, "[a] party seeking discovery may move for an order

---

[1] At the hearing, there was a dispute as to whether Soo Line's Exhibit 12 to the Declaration of Norman H. Pentelovitch (ECF No. 57) was properly included in the record.  In their Joint Motion Regarding Continued Sealing, submitted after the hearing, the parties agreed that Exhibit 12 would be withdrawn from the record.  (ECF No. 61 at 3.)  Therefore, the Court considers this issue moot.

compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). This Court "has considerable discretion in granting or denying discovery requests." *Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 534 (D. Minn. 2008).

### 2. Interrogatory Nos. 5 and 7

Interrogatory Nos. 5 and 7 seek information regarding legal expenses and related costs incurred by Soo Line as well as an estimate of future costs Soo Line anticipates it will incur in connection with environmental contamination at the Shoreham Yard.

Shortly before Travelers filed this motion, the parties met and conferred and Soo Line agreed to supplement its responses to these interrogatories. (Travelers's Mem. in Supp. at 10, 14 n.3, ECF No. 41; Soo Line's Mem. in Opp'n at 11, ECF No. 46.) At the hearing, the parties largely agreed that this dispute was resolved except for Travelers's concerns regarding ongoing production and the resultant impact on existing deadlines in this matter.

The Court will take up the issue of scheduling in Section II.B *infra*. Otherwise, the Court concludes that any dispute as to Soo Line's responses to Interrogatory Nos. 5 and 7 is premature and Travelers's motion is denied without prejudice with respect to Interrogatory Nos. 5 and 7.

### 3. Interrogatory No. 10

Interrogatory No. 10 requests information related to certain statements made in regulatory filings by Canadian Pacific Railway Ltd., Soo Line's parent company:

> Identify all Persons that participated in the drafting of statements regarding environmental liability and/or damages at the Site contained in Canadian Pacific Railway Ltd.'s 10K

> Annual Statements in 2016 and 2017 and/or 10Q Quarterly
> Statements in 2016, 2017, 2018, and Identify all schedules and
> all underlying Documents relied upon in drafting such
> statements.

(Travelers's Mem. in Supp. at 14.)  "In essence, the[se] regulatory filing[s] present[] a

summary estimate of environmental risks at a large number of sites throughout the [United

States] and Canada."  (Soo Line's Mem. in Opp'n at 16.)  For example, in one filing,

Canadian Pacific Railway Ltd. explained how it estimated environmental liabilities when

preparing certain financial statements.  (*See* 2017 Form 10-K at 84, Ex. 18 to Decl. of

William T. Mandia, ECF No. 42-18.)  In discussing its environmental liabilities, Canadian

Pacific Railway Ltd. stated that it

> has developed remediation strategies for each property based
> on the nature and extent of the contamination, as well as the
> location of the property and surrounding areas that may be
> adversely affected by the presence of contaminants. . . . Site-
> specific plans range from containment and risk management of
> the contaminants through to [sic] the removal and treatment of
> the contaminants and affected soils and groundwater.  The
> details of the estimates reflect the environmental liability at
> each property.

(2017 Form 10-K at 84.)

Travelers asserts that information pertaining to the Shoreham Yard that was relied

upon in drafting these regulatory statements regarding anticipated future environmental

liabilities is relevant to Soo Line's allegation that it will spend millions more in the future

in connection with the Shoreham Yard.  At the hearing, Travelers emphasized that it was

only seeking information related to the Shoreham Yard.

Soo Line responds that these are broad, summary estimates, inclusive of "a large

number of sites," and "information specifically about [the] Shoreham [Yard] cannot be easily disaggregated from the boarder set of information" used to produce these regulatory filings.  (Soo Line's Mem. in Opp'n at 16.)  Soo Line also responds that the requested information is not proportional to the needs of the case because it needs "to be collected from a non-party" while, at the same time, maintaining that responsive information has already been produced in response to other discovery requests.  (Soo Line's Mem. in Opp'n at 17.)

The Court agrees that high-level, generalized information of the type contained in Canadian Pacific Railway Ltd.'s regulatory filings concerning its *overall* estimated future environmental liabilities is of minimal value to this coverage dispute, which is confined to a specific property, and not proportional to the needs of this case.  But, to the extent there are any schedules and documents, or portions of any such schedules and documents, *specific* to the Shoreham Yard that were relied upon in drafting these regulatory statements, such information is directly relevant to Soo Line's claims that it "expects to spend millions more" in connection with environmental contamination at the Shoreham Yard.  Further, while Soo Line asserts that requiring it to "collect[ documents] from a non-party to this case" is disproportionate to the needs of this litigation,  Soo Line does not contend that such information is not within its possession, custody, or control, and in fact appears to have already produced some of these documents in response to other discovery requests.  *See* Fed. R. Civ. P. 34(a)(1); *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 981, 982-83 (D. Minn. 2008); *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000); *see also Polaris Indus., Inc. v. CFMOTO Powersports, Inc.*, No. 10-cv-4362

(JNE/JJG), 2012 WL 13028232, at *3-5 (D. Minn. Jan. 12, 2012).

Therefore, the Court will grant Travelers's motion in part and order Soo Line to supplement its response to Interrogatory No. 10[2] to the extent that there are any schedules and documents, or portions thereof, that are specific to the Shoreham Yard that were relied upon in drafting these regulatory statements. Travelers's motion is otherwise denied with respect to Interrogatory No. 10.

### 4. Interrogatory Nos. 12 and 17 and Document Request No. 38

Interrogatory Nos. 12 and 17 and Document Request No. 38 seek information regarding notices, reports, and updates Soo Line provided to any insurer regarding environmental contamination, investigation, and remediation at the Shoreham Yard.

Travelers asserts that this information is relevant to environmental contamination, investigation, and remedial activities that have taken place at the Shoreham Yard, pointing out that "the claims and defenses in this case involve long-standing environmental contamination at a location that has operated as a railway since the late 1880s" and the allegations in the Complaint reflect that Soo Line has been engaged in investigation and remediation of such contamination "since at least the early 1990s." (Travelers's Mem. in Supp. at 18.) According to Travelers, these communications are relevant to several issues in this case, including but not limited to (1) the number of "occurrences"; (2) the appropriate allocation period; (3) whether the claimed costs were incurred with respect to

---

[2] To the extent necessary, Soo Line shall supplement its response to Document Request No. 3, which seeks "[a]ll documents identified, referenced, relied on, described in (or that You were requested to identify or describe), or that relate to or concern Your responses to Travelers's Interrogatories." (Soo Line's Resps. to Travelers's First Req. for Produc. of Docs. at 4, Ex. 2 to Mandia Decl., ECF No. 42-2.)

the investigation and remediation of damage to Soo Line's own property as opposed to the investigation and remediation of third-party property damage; and (4) whether Soo Line provided adequate notice to Travelers regarding the environmental contamination for which it now seeks coverage.

Soo Line counters that Travelers has "offer[ed] only conclusory statements about the relevance of such documents that fail to identify how interactions with other insurers will support any party's claims or defenses." (Soo Line's Mem. in Opp'n at 18.) Soo Line additionally counters that notice is defined under the relevant policies and what Soo Line may have provided to other insurers is not relevant as to whether Soo Line fulfilled its notice obligations under the policies at issue, and Travelers has not explained how any such communications will provide relevant information as to Soo Line's cooperation with Travelers regarding the Shoreham Yard.

As Travelers explained at the hearing, the issue of whether Soo Line provided adequate notice in connection with environmental contamination at the Shoreham Yard is central to Travelers's defense in this litigation. Information concerning what Soo Line communicated to other insurers regarding environmental contamination at the Shoreham Yard is relevant to what Soo Line knew and when (as compared to what it may have shared with and represented to Travelers) and Soo Line's allegation that it "cooperated with and apprised Travelers of significant events transpiring with respect to the Shoreham Yard." (Compl. ¶ 41.) Soo Line's communications with other insurers characterizing and discussing environmental contamination at the Shoreham Yard are also relevant to Travelers's defense that the environmental contamination resulted from multiple

occurrences rather than a single occurrence and what was being done to address any environmental contamination.

Soo Line relies on *HDI-Gerling America Insurance Co. v. Taylor Morrison Services, Inc.*, No. 1:09-CV-2364-JEC, 2010 WL 11508832 (N.D. Ga. Sept. 16, 2010) [hereinafter *HDI-Gerling*], for the proposition that "[s]imilar demands for communications with 'other' insurers have previously been determined to be irrelevant in evaluating claims regarding a particular insurance policy." (Soo Line's Mem. in Opp'n at 18.) *HDI-Gerling*, however, presents a different procedural and legal posture than the present case. In *HDI-Gerling*, the motion to compel was brought in response to the plaintiff insurer's motion for summary judgment that it had no duty to defend the defendant insured under the policy. 2010 WL 11508832, at *1-2. The insured sought to delay a ruling on the insurer's motion for summary judgment in order to conduct additional discovery, including the insurer's communications with other insurers regarding the subject litigation. *Id.* at *7. The *HDI-Gerling* court denied the motion, reasoning:

> None of the requested documents have any bearing on plaintiff's motion for summary judgment. Plaintiff's motion concerns only one issue: whether plaintiff has a duty to provide a defense in the *Rosa* litigation. Under Georgia law, that issue is resolved by comparing the allegations of the complaint against the insured with the terms of the insurance policy. If it is clear from the allegations that the asserted claims do not fall within the coverage of the policy, the insurer does not have a duty to defend the insured. That is the case here.

*Id.* (citations omitted).

First, this is not a duty-to-defend case. Second, the discovery being sought is not in conjunction with a request to delay a dispositive ruling on the merits. At this early stage

of the litigation, it would be premature to limit Travelers's ability to pursue discovery relevant to the pieces of its overall defense strategy that the environmental contamination at the Shoreham Yard is not covered under the policies. *See St. Jude Medical, S.C., Inc. v. Biosense Webster, Inc.*, No. 12-cv-621 (ADM/AJB), 2013 WL 3899967, at *3 (D. Minn. July 29, 2013) ("[P]arties are generally entitled to pursue discovery relevant to their stated claims or defenses, even if their opponent has a dim view of those positions."). Third, while the Court acknowledges Soo Line's concerns over litigation by comparison, these concerns go more to the use and admissibility of evidence on various issues in this litigation. Again, "[i]nformation within th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Nothing about the discoverability of this information precludes Soo Line from later challenging the use of such information by Travelers in a particular context.

Therefore, Travelers's motion is granted with respect to Interrogatory Nos. 12 and 17 and Document Request No. 38.

### 5. Interrogatory No. 21 and Request for Production No. 11

Interrogatory No. 21 and Request for Production No. 11 seek information and documents relating to insurance policies purchased by Soo Line and its predecessors and periods of time for which Soo Line did not obtain insurance coverage. Travelers asserts that responsive discovery "bear[s] directly on the issue of allocation of costs and expenses among other insurers and Soo Line." (Travelers's Mem. in Supp. at 20.)

The parties' dispute is largely bound up in legal questions that have not yet been decided in this case. At least at this stage of the proceedings, the parties agree that damages

resulting from environmental contamination at the Shoreham Yard would be allocated among the insurers by the "pro rata by time on the risk" method. (Travelers's Mem. in Supp. at 20-22; Soo Line's Mem. in Opp'n at 20-21.) *See, e.g.*, *Land O' Lakes, Inc. v. Emp'rs Mut. Liab. Ins. Co. of Wisc.*, 846 F. Supp. 2d 1007, 1038 (D. Minn. 2012) ("Under Minnesota law, damages for environmental contamination that takes place over an extended period of time are allocated by the 'pro rata by time on the risk' method." (quoting *N. States Power Co. v. Fid. & Cas. Co. of N.Y.*, 523 N.W.2d 657, 663 (Minn. 1994) (internal quotation marks omitted)). "In other words, each triggered policy bears a share of the total damages proportionate to the number of years it was on the risk relative to the total number of years of coverage triggered." *Land O' Lakes*, 846 F. Supp. 2d at 1038 (quotation omitted).

Soo Line's predecessor, the Minneapolis, St. Paul, and Sault Ste. Marie Railroad, was formed in 1944, and purchased the Shoreham Yard "from the bankruptcy estate of another rail company" that same year. (Compl. ¶ 30.) Soo Line does not dispute that insurance was available in the market before 1944 and that insurance policies for the Shoreham Yard existed prior to 1944. Soo Line maintains, however, that information pre-1944 is not relevant because Soo Line did not exist prior to that time, citing a 2011 arbitration award ("the London Arbitration") involving other insurers where the allocation period was determined to be 1944 to 1977.

There has been no determination that the London Arbitration—a dispute involving different insurers—has a preclusive effect in this case. There has been no determination as to the beginning (or the end) of the applicable allocation period in this case. There has

11

been no determination regarding what effect, if any, the purchase of the Shoreham Yard from a bankruptcy estate has on the issues in this litigation, including but not limited to any appropriate allocation period. At this stage of the proceedings, there is only Soo Line's allegation that the subject environmental contamination has been ongoing throughout the operation of the Shoreham Yard, which, by Soo Line's own account, began sometime in the 1880s.

Soo Line has alleged that the environmental contamination at issue has been practically continuous since the Shoreham Yard's inception. Ultimately, the environmental contamination may be the result of a single occurrence. But, it may not. The relevant allocation period may, in the end, align with the allocation period in the London Arbitration. But, it may not. There are a myriad of ways the many complex factual and legal issues in this case may narrow over the course of litigation. But, they have not yet been so narrowed. Travelers need not accept Soo Line's characterization as to the usefulness of the pre-1944 information to Travelers's own defense. The discovery sought is relevant to issues of allocation and other policies that may be implicated in connection with the environmental contamination at the Shoreham Yard.

Therefore, Travelers's motion is granted with respect to Interrogatory No. 21 and Request for Production No. 11.

### 6. Interrogatory No. 19

Interrogatory No. 19 asks Soo Line to "state with particularity any and all bases for (and Identify all Documents that support) [its] contention that there was only one 'occurrence' at the Site as defined in the Travelers policies at issue in this Action."

(Travelers's Mem. in Supp. at 22 (quotation omitted).) While Soo Line provided a narrative response to Interrogatory No. 19, Soo Line did not identify any documents as part of its response.

Travelers argues that "the issue of whether there was one 'occurrence' or multiple 'occurrences' at the Shoreham Yard is a central and critical issue in this case regarding the potential scope of coverage under the . . . [p]olicies," and "Soo Line should . . . be required to identify the documents it relies on to support its assertion that there was only a single 'occurrence' at the Shoreham Yard." (Travelers's Mem. in Supp. at 23.) Soo Line responds that its narrative response is sufficient at this juncture. Soo Line "anticipates that the issue of occurrences will ultimately be decided by the Court, with heavy reliance on the input of experts." (Soo Line's Mem. in Opp'n at 24.) As a result, "Soo Line anticipates that its own experts will ask for particular documents related to these issues, and [Soo Line] will [then] identify those documents relied upon." (Soo Line's Mem. in Opp'n at 24.) Because expert disclosures are due in August under the Pretrial Scheduling Order, Soo Line contends that its response is presently complete.

"Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Soo Line has alleged that the environmental contamination borne out of "[a]ccidental, repeated, and continuous spills and leaks" at the Shoreham Yard meets the definition of "occurrence" under the policies at issue. (Compl. ¶¶ 3, 6, 24, 28, 33-34, 39-40.) Central to Travelers's defense in this litigation is whether the environmental contamination at issue was the result of one "occurrence" or multiple "occurrences." Travelers is entitled to discover the basis for Soo

13

Line's allegation that the environmental contamination at the Shoreham Yard resulted from a single occurrence and those documents that presently support Soo Line's position, even if Soo Line may rely on additional documents and experts in the future. Soo Line has proffered no basis for not fully responding to Interrogatory No. 19 other than that it anticipates relying on experts in the future. The fact that Soo Line may rely on experts in the future does not exempt Soo Line from fully responding to Interrogatory No. 19 and identifying those documents in support of its position at this time. *See United States v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063, at *2 (D. Minn. Apr. 2, 2019) ("Defendants may discover the basis for these initial allegations at this stage of the litigation, even if it is not the full universe of facts that ultimately are offered in support of the allegation at trial."). Soo Line may—and indeed has an obligation to— later supplement its response to Interrogatory No. 19 to reflect any expert information as necessary. *See* Fed. R. Civ. P. 26(e)(1); *see also* Fed. R. Civ. P. 33 advisory comm. note to 1970 amend. ("[T]he interrogating party will ordinarily not be entitled to rely on the unchanging character of the answers he receives and cannot base prejudice on such reliance.").

Therefore, Travelers's motion is likewise granted with respect to Interrogatory No. 19.

### B. Extension of Pretrial Deadlines

Lastly, Travelers moves for an extension of the existing deadlines in the Pretrial Scheduling Order by 120 days, citing delayed document production by Soo Line. At the hearing, Soo Line acknowledged that its document production has progressed more slowly

than anticipated and proposed that the existing deadlines be extended by 60 days. Soo Line has produced a substantial number of documents since the hearing. (*See* ECF Nos. 62, 64.)

Rule 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see* D. Minn. LR 16.3. "The primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements." *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014 (quotation omitted); *see also Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008).

There have been a number of challenges with document production in this case, including those related to the age and type of responsive documents to be produced as well as metadata. These challenges have resulted in longer production times than anticipated. Travelers's discovery requests were served back in September 2018 and Soo Line's document production has continued through at least the beginning of May 2019. Travelers has shown good cause to extend the existing deadlines to account for these delays.[3] Accordingly, the Court will grant the requested extension in its entirety, extend the existing deadlines by 120 days, and issue an Amended Pretrial Scheduling Order.

In closing, the Court notes Travelers has also requested that the Court order Soo Line to complete any ordered supplementation with 14 days from the date of this Order and convene a status conference to set a date certain for the completion of Soo Line's document production. The Court declines to do so. The parties, rather than the Court, are

---

[3] In finding good cause, the Court is not suggesting that Soo Line has been dilatory.

the most knowledgeable regarding the specific realities of document production in this case. As such, the parties, rather than the Court, are in the best position to manage those realities in the context of this litigation. The Court strongly encourages the parties to maintain open communication as to the timing of any additional production and supplementation and to regularly meet and confer in order to keep each other updated.

[Continued on next page.]

# III. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Travelers's Motion to Compel Discovery and to Extend Case Deadlines (ECF No. 39) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. An Amended Pretrial Scheduling Order shall issue shortly.

3. Each party shall bear its own costs and attorney fees. *See* Fed. R. Civ. P. 37(a)(5)(C).

4. All prior consistent orders remain in full force and effect.

5. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: May__29___, 2019

_____*s/ Tony N. Leung*_____
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Soo Line Railroad Co. v. Travelers Indemnity Co. et al.*
Case No. 18-cv-1989 (SRN/TNL)